SUZANNA M. HOINS, APPELLANT, V. MARK A. HOINS, APPELLEE.

584 N.W. 2d 480

Filed September 1, 1998.    A-97-958.

Jeffry D. Patterson, of Healey & Wieland Law Firm, for appellant.

Lyle Joseph Koenig, of Koenig & Stover, P.C., for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Suzanna M. Hoins appeals from an order entered by the Saline County District Court granting Mark A. Hoins' application to modify custody of their minor child from Suzanna to him. Because we conclude that Mark failed to provide any evidence to demonstrate a material change of circumstances justifying a modification of custody, we reverse, and remand the case with directions.

## II. BACKGROUND

On August 20, 1990, Suzanna and Mark's marriage was dissolved by the district court. In the dissolution decree, the district court granted custody of the parties' minor child, Renae Sue Hoins, to Suzanna. Mark was granted reasonable visitation

rights. Additionally, Mark was ordered to pay $240 per month child support.

Following the dissolution, Suzanna became involved with a man named "Duane." Suzanna and Duane lived together for a period of approximately 1 year before they were married. Suzanna and Duane were married for approximately 3½ years before the marriage ended in dissolution in 1995. Renae lived with the couple throughout their relationship. During Suzanna and Duane's relationship, they lived in Dorchester, Nebraska, and Renae attended school in Dorchester.

In 1995, after Suzanna's marriage to Duane was dissolved, she and Renae moved to Kramer, Nebraska, to live with a man named "Bob," with whom Suzanna had become involved. According to the record, Bob had a son who was approximately 15 years old at the time. After moving to Kramer, Renae began the 1995-96 school year attending school in Crete. After approximately 2 months, however, Renae requested to return to school in Dorchester. Suzanna granted this request, and Renae completed that school year in Dorchester, although she continued to live with Suzanna and Bob in Kramer.

On December 8, 1995, Suzanna and Renae were involved in an automobile accident. According to the record, the accident occurred while Suzanna was driving Renae from Kramer to Dorchester before school in the morning. Renae suffered only minor injuries. Suzanna, however, suffered serious injuries. According to the record, Suzanna spent 2 weeks in the hospital. During the 9 weeks immediately following the accident, Renae lived with Mark's father in Crete, Nebraska. Mark moved in with his father during this period to care for Renae. In February 1996, Renae returned to live with Suzanna.

In August 1996, Suzanna and Bob stopped seeing each other. Suzanna and Renae moved back to Dorchester. Renae asked to begin the 1996-97 school year in Crete, and Suzanna granted her request. Suzanna became involved with a man named "Randy," who moved into Suzanna and Renae's home in October 1996.

On August 12, 1996, Mark filed an application to modify the dissolution decree. Mark alleged that there had been a substantial change of circumstances since the entry of the dissolution decree and that a change of custody was warranted. In support

of his allegation of a substantial change of circumstances, Mark alleged that Renae was not in a stable environment, because she had recently moved from one residence to another; that Renae had been in and out of school and had not attended school regularly; that Renae was not properly cared for and was often left in the care of others; that Suzanna had been in and out of the hospital and was not able to properly care for Renae; that Suzanna failed to provide Renae a proper role model because she frequently had a boyfriend in the house; and that Suzanna caused constant turmoil for Renae.

On September 4, 1996, Suzanna filed an answer and cross-petition. Suzanna generally denied that any substantial change justifying a change of custody existed. Additionally, Suzanna alleged that there had been a material change of circumstances justifying a change in the child support order. Suzanna alleged that Mark now had significantly higher wages, that Suzanna had significantly lower income, and that the Nebraska Child Support Guidelines had been amended since the entry of the dissolution decree.

On September 8, 1997, the court entered an order modifying the original dissolution decree. The court granted Mark's application and awarded custody of Renae to Mark. The court held that "there has been a substantial change in circumstances since the divorce, and it is in the best interest of the minor child . . . to be transferred from the custody of her mother to that of her father." The court also ordered Suzanna to pay child support, but ordered her to pay only $25 per month "because her income appear[ed] to be below the federal poverty level." Suzanna filed this timely appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, Suzanna has assigned two errors. First, Suzanna asserts that the district court erred in modifying custody of Renae from Suzanna to Mark. Second, Suzanna asserts that the district court erred in failing to increase Mark's child support obligation.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

The determination as to modification of a dissolution decree is a matter of discretion for the trial court, and its deci-

sion will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Hassenstab v. Hassenstab*, 6 Neb. App. 13, 570 N.W.2d 368 (1997). See, also, *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996); *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

## 2. CUSTODY

Suzanna first asserts that the district court erred in modifying the custody of Renae from Suzanna to Mark. Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the minor child require such action. *Sullivan v. Sullivan, supra*; *Smith-Helstrom v. Yonker, supra*; *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986); *Hassenstab v. Hassenstab, supra.* The party seeking modification of child custody bears the burden of showing that a material change in circumstances has occurred. *Id.*

In determining a child's best interests for purposes of custody and visitation matters, Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 1994) provides that the factors to be considered shall include, but not be limited to, the following:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member.

Additionally, a court may consider other factors in determining a child's best interests in custody matters, including the moral fitness of the child's parents and the parents' sexual conduct, the attitude and stability of each parent's character, and the parental capacity to provide physical care and satisfy educational needs of the child. See *Smith-Helstrom v. Yonker, supra.*

In the present case, Mark wholly failed to provide any evidence to demonstrate a material change in circumstances affecting the best interests of Renae. Although Mark did present evi-

dence that in the 7 years between the divorce and the modification hearing, Suzanna has lived with three different men, there was absolutely no evidence to indicate what effect, if any, these relationships had on Renae. The record indicates that Suzanna was married to one of the three men for nearly 3½ years and was engaged to be married to the third man at the time of the modification hearing. No testimony was presented to indicate Renae's relationship with these men or how the relationships affected her.

Mark also presented evidence that Renae changed schools between Dorchester and Crete on a couple of occasions. However, the record also indicates that except for the initial change in schools from Dorchester to Crete, which lasted for only 2 months, the subsequent changes were at Renae's request. Mark also failed to provide any evidence whatsoever concerning the effect that changing schools had on Renae. There was no evidence presented concerning her behavior in school, her attendance in school, her grades in school, or any difficulties she may have had as a result of the changes.

Finally, there was evidence presented which indicated that Suzanna was disabled as a result of the automobile accident. However, once again, Mark utterly failed to produce any evidence to suggest that Suzanna's disability had any effect on her ability to care for and provide for Renae. There was no testimony or other evidence presented to indicate that the disability had any effect at all on Renae. We also note that the trial judge made no specific findings concerning the disability or its impact on Suzanna's ability to care for Renae.

We also note that there was absolutely no evidence adduced to show any changes in Suzanna and Renae's living environment or in Renae's school setting in the year preceding the modification hearing. According to the record, for the entire year prior to the modification hearing Suzanna and Renae lived in Dorchester and Renae attended school in Crete. The only change in circumstances evidenced during the preceding year was that Suzanna's boyfriend Randy moved into the home in October 1996. The record also indicates that Suzanna and Randy were engaged to be married approximately 2 weeks after the modification hearing.

Although not determinative, we note that prior case law in Nebraska indicates that evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986); *Hassenstab v. Hassenstab*, 6 Neb. App. 13, 570 N.W.2d 368 (1997). The focus is on the best interests of the child now and in the immediate future, and how the custodial parent is behaving at the time of the modification hearing and shortly prior to the hearing is therefore of greater significance than past behavior when attempting to determine the best interests of the child. *Id.*

On the record before us, there is not even a scintilla of evidence to support the findings of the district court. It is apparent from the court's order that the court's decision was driven by a judgment that Suzanna's having three different boyfriends during the preceding 7 years was somehow detrimental to Renae. There was no evidence upon which to base such a finding, because Mark failed to present any evidence concerning Renae.

The district court noted that Suzanna "has had seven (7) years to adjust to the 1990 divorce" and that "Renae has had to adjust to living with three (3) adult men since custody was granted to her mother, whether she witnessed any sexual acts or not." There was absolutely no evidence presented concerning sexual activity of Suzanna, just as there was absolutely no evidence presented concerning any effect on Renae from "ha[ving] to adjust to living with three (3) adult men." The record does, however, indicate that Mark failed to exercise his visitation rights on several occasions, including five or six occasions during the 6 months immediately preceding the modification hearing and that Mark has, on occasion, had female guests overnight in his home while Renae was present on visitation. On the record before us, the district court committed an abuse of discretion in modifying the custody award, and the court's order must be reversed.

### 3. CHILD SUPPORT

Suzanna also challenges the district court's failure to modify the child support award. In light of the district court's grant of

custody to Mark, the court did not reach the issue of whether Mark should be ordered to pay a higher amount of child support. The court did, however, find that Suzanna's income level was now "below the federal poverty level" and ordered her to pay $25 per month in support to Mark.

The record indicates that Suzanna's monthly income consists of $600 per month in disability payments. At the time of the modification hearing, she was also receiving sick leave payments from her employer, but she testified that she had only 2 weeks of sick leave left at that time and that she would not be able to return to her employment because the doctor would not release her to work as a result of the injuries she sustained in the automobile accident.

The record also indicates that Mark was averaging approximately $2,236 per month in wages and more than $590 per month in consistent overtime wages through the first 6 months of 1997. Mark earned approximately $36,000 in wages in 1996, although there was no evidence as to how much was ordinary wages and how much was overtime wages. As such, Mark has substantially more income than Suzanna.

Finally, since the initial dissolution decree was entered in August 1990, the Nebraska Supreme Court has amended the child support guidelines. Table 1, which is used to determine the total amount of child support to which a minor child is entitled per month, was amended effective January 1, 1996, and effective March 26, 1997, and the entire guidelines were amended effective January 1, 1996. As a result of these amendments and the parties' current financial circumstances, it is apparent that application of the current guidelines would result in a variation of more than 10 percent of Mark's current obligation, and the record supports a finding that the financial circumstances have lasted for at least 3 months and can reasonably be expected to last for an additional 6 months. See Nebraska Child Support Guidelines, paragraph Q.

In light of the amendments to the guidelines and the change in the parties' incomes, it is apparent that the child support award needs to be modified. The district court recognized that the parties' incomes have substantially changed by ordering Suzanna to pay only $25 per month in support to Mark upon the

court's erroneous modification of custody. As a result, on remand the district court is to hold a hearing and complete a child support worksheet and modify the child support appropriately.

### V. CONCLUSION

Because the district court abused its discretion in modifying the custody order, we reverse that portion of the district court's order and restore custody to Suzanna. The case is remanded for an order modifying the child support award.

REVERSED AND REMANDED WITH DIRECTIONS.