BRIAN HEISTAND, APPELLEE, V.
LORI HEISTAND, APPELLANT.
673 N.W.2d 541

Filed January 23, 2004.   No. S-02-1412.

Kelly T. Shattuck, of Cohen, Vacanti, Higgins & Shattuck, for appellant.

T.J. Pattermann, of Smith Peterson Law Firm, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

Stephan, J.

Lori Heistand appeals from an order of modification entered by the district court for Douglas County in which physical custody of the parties' minor child was transferred from Lori to Brian Heistand. We conclude, based upon our de novo review, that the district court abused its discretion in so holding.

## BACKGROUND

On January 17, 1991, the marriage of Lori and Brian was dissolved by a court in Missouri, where both had resided for more than 90 days prior to the commencement of the dissolution proceeding. At the time of the decree, the parties had one minor child, Abby, who was born on April 1, 1990. The decree provided for the parties to have joint legal custody of Abby and for Lori to have physical custody of Abby with reasonable rights of visitation for Brian.

In July 2000, Brian resided in Council Bluffs, Iowa, and Lori and Abby resided in Omaha, Nebraska. On July 3, Brian filed a petition for modification of child custody in the district court for Douglas County, alleging generally that there had been a material change in circumstances subsequent to the decree which necessitated a change in custody. Brian alleged that Lori's anticipated move out of the State of Nebraska was intended in part to deprive him of visitation rights and was not in Abby's best interests. Brian also alleged that Lori was "keeping company with persons of a questionable nature at this time." Lori filed an answer and cross-petition on July 17, generally denying Brian's allegations regarding custody and requesting an increase in child support.

Brian filed an amended petition on August 3, 2000, alleging that the district court continued to have jurisdiction over the modification proceeding despite the fact that Lori and Abby had moved to Kansas, because Nebraska had been Abby's home state at the time the action was commenced. On August 10, Lori filed an answer and cross-petition affirmatively alleging that Brian had failed to state facts sufficient to support modification of custody and that Nebraska lacked jurisdiction to determine custody because none of the parties were currently residing in Nebraska. After a hearing in October, Lori moved back to Omaha. The parties participated in court-ordered mediation and

agreed to a parenting plan which was subsequently filed with the district court on March 19, 2001.

In the summer of 2001, Lori moved to the Kansas City, Missouri, area. The parties arranged for Abby to stay with Brian and attend school in Council Bluffs. The parties agreed that Lori would receive liberal visitation. Abby moved in with Brian on August 11 and started school in Council Bluffs on August 23. The parties arranged for Abby to visit Lori the weekend of September 14 to 17. When Brian called Lori on September 16 to make arrangements for Abby's return, Lori refused to return Abby and told Brian that Abby would be remaining with her.

On September 20, 2001, Brian filed a motion for injunctive relief seeking an emergency restraining order and enforcement of the settlement, with a hearing to be held on October 2. The petition prayed for an order enforcing the parties' settlement agreement and for Lori to return Abby to the court's jurisdiction. On September 26, the court entered an ex parte custody order ordering Lori to return Abby to Brian. Abby, however, remained with Lori.

On October 1, 2001, Lori filed a motion asking the court to conduct an in camera interview of Abby and requesting attorney fees. Lori alleged that Abby had informed her that she would not live with Brian or speak to him because of certain conduct on his part. An in camera review was held on October 2, at which time Abby clearly expressed her preference to stay with Lori. The district court ordered Abby to remain with Lori, vacated and set aside its ex parte custody order, and set trial for November 7.

Following trial, the district court entered an order on November 26, 2001, in which it first determined that it had properly assumed jurisdiction pursuant to Neb. Rev. Stat. § 43-1203 (Reissue 1998). The court declined to address Lori's cross-petition for an increase in child support, finding that the issue was not properly before the court because the Missouri decree had not been registered in Nebraska as required by Neb. Rev. Stat. § 42-746 (Reissue 1998). Regarding custody of Abby, the court stated:

> Given all of the facts in this case, this Court finds that no change should be made in Abby's primary residence at this time. She has moved too many times already, including the move in September, 2001. It would not be in her

best interests to further disrupt her school year. There are too many pressures put on Abby. The situation should be stabilized with a detailed visitation plan, the appointment of a guardian ad litem, and counseling for all concerned. There are simply too many uncertain elements in this case for this Court to say that material changes have occurred such as to justify placing sole custody in Brian Heistand.

The court further stated in its order that a guardian ad litem would be appointed and that "either party, or the guardian, may after the conclusion of Abby's spring school term in 2002 apply for further hearing. Such further hearing shall expressly extend to all the issues raised in the previous hearings on this matter before this Court."

A guardian ad litem was appointed by separate order entered November 26, 2001. On August 8, 2002, Brian filed an application for hearing to determine custody, visitation, and child support. Trial on the application was held on November 1. Brian and Lori both testified, as did Lori's neighbor and coworker. The guardian ad litem testified in that capacity and as a court-appointed "expert witness."

On November 20, 2002, the district court entered an order of modification finding that "[i]t is in the best interests of Abby Leigh Heistand that her care, custody, control and possession be placed solely in petitioner Brian Heistand." Lori filed this timely appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

Additional evidentiary facts and procedural history will be incorporated in our analysis of the issues presented for appellate review.

### ASSIGNMENTS OF ERROR

Lori assigns, restated and reordered, that the district court erred in (1) failing to determine that the State of Nebraska was an inconvenient forum to make a custody determination in this matter; (2) allowing opinion testimony of the guardian ad litem as an improperly designated expert, pursuant to Neb. Evid. R. 706, Neb. Rev. Stat. § 27-706(1) (Reissue 1995); (3) failing to

sustain objections to hearsay testimony offered by the guardian ad litem; and (4) finding that a material change in circumstances which was in the best interests of Abby existed, warranting a modification of the parties' decree of dissolution of marriage.

## STANDARD OF REVIEW

■ When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

■ An appellate court's review of the trial court's admission or exclusion of expert testimony which is otherwise relevant will be for an abuse of discretion. *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001).

■ Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002); *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

## ANALYSIS

### INCONVENIENT FORUM

Lori argues that the district court erred in failing to determine that the State of Nebraska was an inconvenient forum. Section § 43-1203(1) provides in relevant part that a Nebraska court has jurisdiction to decide child custody matters by initial or modification decree if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state[.]

"Home state" is defined by Neb. Rev. Stat. § 43-1202(5) (Reissue 1998) as

> the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons shall be counted as part of the six-month or other period[.]

Section 43-1203(3) provides that although physical presence of the child is desirable, it is not a prerequisite for jurisdiction to determine his or her custody.

Neb. Rev. Stat. § 43-1207(2) (Reissue 1998) provides that "[a] finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child." Section 43-1207(3) lists the following nonexclusive factors that a court is to consider in determining if it is in the best interests of the child that another state assume jurisdiction:

> (a) If another state is or recently was the child's home state;
>
> (b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> (c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
>
> (d) If the parties have agreed on another forum which is no less appropriate; and
>
> (e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in [Neb. Rev. Stat. §] 43-1201 [(Reissue 1998)].

Lori concedes that Nebraska was Abby's home state as defined by § 43-1202(5) at the time Brian filed his petition for modification of custody in July 2000. The district court therefore had jurisdiction over this matter pursuant to § 43-1203(1)(a)(i). Lori contends, however, that the district court erred in not declining jurisdiction under § 43-1207. In determining that Nebraska was

an appropriate forum, the district court stated: "It is in the best interests of Abby Heistand that the State of Nebraska assume jurisdiction because at least Brian Heistand has a significant connection with this state and there is available in this state substantial evidence regarding Abby's future care, protection, training, and personal relationships." The record demonstrates that the court's factual findings on this issue are not clearly incorrect, and thus we must uphold the court's determination. See *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003). Lori's first assigned error is without merit.

### TESTIMONY OF GUARDIAN AD LITEM

Lori argues that the district court erred in permitting the guardian ad litem to give opinion testimony as a court-appointed expert. She also contends that the court erred in overruling certain hearsay objections to the guardian ad litem's testimony. Some additional background is pertinent to our consideration of these issues.

In its November 26, 2001, order the district court determined on its own motion that a guardian ad litem should be appointed, "instructed to assess the resources available for counseling for Abby and the parties," and "report to the Court whatever counseling the guardian recommends." On the same day, the court entered a separate order appointing a guardian ad litem with "all powers, privileges and responsibilities necessary or desirable for the full and effective performance of her duties and obligations to [Abby]." The guardian ad litem in this case is a practicing attorney who also holds a master's degree in maternal-child nursing. The order of appointment instructed the guardian ad litem to provide the court and attorneys for the parties with a "final written report advising the Court of such matters as the Guardian Ad Litem deems necessary," but did not specifically designate the guardian ad litem as a court-appointed expert pursuant to § 27-706(1).

The guardian ad litem served the parties with her report on July 18, 2002. The report was based upon correspondence from the parties' counselors, Abby's school records, interviews with Brian and his fiance, and interviews with Abby and Lori. Brian's counsel offered the report at the November 1 hearing, and the court

sustained Lori's hearsay objection, stating: "It is hearsay. It will be made part of the record of the Court, but the witness ought to testify to the contents so there will be firsthand information." The judge stated on the record that he had not read the report.

Brian called the guardian ad litem to testify at the November 1, 2002, hearing as an expert witness. The guardian ad litem testified that she had been appointed a "706 expert" at a meeting held in the judge's chambers shortly before the hearing. There is no verbatim record of this meeting, although counsel for the parties seems to agree that it transpired. During direct examination, the guardian ad litem was asked her opinion "as to where the Court should place Abby Heistand for permanent care and custody." Lori's counsel objected on grounds that such an opinion was not the product of any recognized methodology and invaded the province of the court. The court overruled the objection, stating:

> [I]t seems to me that a person who is an attorney is much more likely to be familiar with the state of the law as it pertains to custody matters, what is to guide a court in determining what is or is not in the best interests of the children. This, after all, is why we appoint attorneys usually as 706 experts.

Lori's counsel subsequently moved to strike opinion testimony of the guardian ad litem on essentially the same grounds. The court deferred a ruling on the motion. During her testimony, the guardian ad litem acknowledged that her opinions were based in part upon hearsay.

In its order of modification, the court overruled the motion to strike, characterizing the guardian ad litem as "one skilled and knowledgeable in the law" who knew "what constitutes a material change of circumstance and . . . how the law looks at such changes to determine the best interests of the child." While acknowledging that the guardian ad litem's opinions or "concerns" about certain facts affecting custody "could have become speculative in some particulars and in others may have merely reflected the guardian's personal value judgments," the court concluded that it was "perfectly capable of disregarding the chaff" and did not look to the guardian ad litem for "some sort of binding opinion," but, rather, "insight and enlightenment from

someone trained in law who has made herself familiar with the facts of this particular case."

We conclude that the district court erred in receiving the opinion testimony of the guardian ad litem for two reasons. Initially, we note procedural deficiencies in the manner in which the guardian ad litem was apparently appointed as an expert witness. Section 27-706(1) provides in relevant part that a judge

> may appoint witnesses of his own selection. An expert witness shall not be appointed by the judge unless he consents to act. A witness so appointed shall be informed of his duties by the judge in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the judge or any party. He shall be subject to cross-examination by each party, including a party calling him as a witness.

The record in this case does not include a written appointment filed with the court. The appointment was apparently made verbally during a pretrial conference in chambers of which there is no verbatim record. Thus, we have no way to determine what "duties" the guardian ad litem was appointed to perform as a rule 706 expert. When asked during her testimony if she had any specialized training upon which to form an opinion, she replied: "If your question is did I do a custody evaluation as a trained psychologist, no, I did not, but I wasn't asked to do a custody evaluation."

In addition to these procedural shortcomings, the record does not reflect that the guardian ad litem was ever properly qualified as an expert with respect to the subject matter of her opinion testimony. Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Pursuant to Neb. Rev. Stat. § 27-705 (Reissue 1995), "an expert's opinion is ordinarily admissible if the witness (1) qualifies as an expert, (2) has

an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination." *Gittins v. Scholl*, 258 Neb. 18, 23, 601 N.W.2d 765, 768 (1999). It appears that in this case, the district court considered the guardian ad litem as an expert on the law as it pertained to modification of child custody by virtue of the facts that she was (1) an experienced lawyer and (2) the duly appointed guardian ad litem with access to certain factual information.

■ The duties of a guardian ad litem in a case involving a child custody dispute "are to investigate the facts and learn where the welfare of his or her ward lies and to report these facts to the appointing court." *Betz v. Betz*, 254 Neb. 341, 345, 575 N.W.2d 406, 409 (1998). Such reports to the court, whether in written form or testimony by the guardian ad litem, including hearsay, are subject to the Nebraska rules of evidence. *Id.* In *Joyce S. v. Frank S.*, 6 Neb. App. 23, 571 N.W.2d 801 (1997), *disapproved in part on other grounds, Betz, supra,* the Nebraska Court of Appeals held that a trial court erred in considering the opinion testimony of a guardian ad litem in a case involving termination of parental rights. The court noted that while "a guardian ad litem may be a legal expert, . . . a person appointed a guardian ad litem is not necessarily an expert on child welfare." *Id.* at 32, 571 N.W.2d at 808. After noting the requirements of § 27-702, the court concluded:

> Bearing in mind that guardians ad litem and judges are invariably lawyers and that most, if not all, trial judges are at least as experienced in the area of child welfare as practicing lawyers, it is doubtful that an opinion of a guardian ad litem, as an expert, would truly assist the judge in understanding the evidence or in determining any issues of fact in litigation involving the welfare of children.

*Joyce S.*, 6 Neb. App. at 32, 571 N.W.2d at 809. One commentary addressing the issue of whether a guardian ad litem can be qualified as an expert witness has expressed a similar view:

> Qualification cannot occur in guardian ad litem situations because no recognized area of general expertise with regard to "custody" or "child placement" exists. The legal standard for determining child placement is the best interests of the child. While there are many factors that may be

considered in making that decision, no widespread scientific standard has evolved that can be applied in assessing all those factors.

. . . .

In custody cases, courts often ask those performing the role of guardian ad litem to render expert opinions even though they do not have the requisite training to do so. It is assumed that they can make such a recommendation merely because they have done an investigation at the request of the court. In effect they are imbued with expertise, merely by virtue of having been placed in that role, irrespective of their actual background. This fictional qualification as a child custody expert then becomes self-perpetuating. The more often a particular individual performs that role, the more likely that the trial court will rely on him as if he were an expert.

The judiciary and the general public assume lawyers are competent to render such an opinion in the role of a guardian ad litem simply because of their experience representing dissolution clients. This logic is akin to assuming that an attorney who has handled a number of soft tissue injury suits would be qualifiable as an expert on soft tissue injuries.

Raven C. Lidman & Betsy R. Hollingsworth, *The Guardian Ad Litem in Child Custody Cases: The Contours of Our Judicial System Stretched Beyond Recognition*, 6 Geo. Mason L. Rev. 255, 275-76 (1998).

■ On this record, we find no showing that the guardian ad litem possessed any scientific, technical, or other specialized knowledge which would assist the trier of fact to understand the evidence or to determine a fact in issue. Moreover, to the extent that the district court invited or considered the opinions of the guardian ad litem on issues of law, we have held in another context that expert testimony concerning a question of law is generally not admissible. *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998). Thus, we conclude that the opinion testimony of the guardian ad litem, and the hearsay incorporated therein, was erroneously admitted. We disregard such evidence in our de novo review, and consider only that evidence which is

relevant and admissible. See *Stecker v. Stecker*, 197 Neb. 164, 247 N.W.2d 622 (1976).

### MATERIAL CHANGE IN CIRCUMSTANCES

The central issue before the district court was whether the custody determination in the original decree should be modified so as to remove Abby from the physical custody of Lori and place her in the custody of Brian. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002). The party seeking modification of child custody bears the burden of showing a change in circumstances. *Id.* Evidence of a material change in circumstances warranting modification of a dissolution decree must be proved at trial and contained in the record on appeal. *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Tremain, supra.*

In our de novo review, we must first determine the timeframe to be examined in determining whether there has been a material change in circumstances affecting custody. The Missouri decree which awarded the parties joint legal custody and awarded physical custody to Lori subject to Brian's right of reasonable visitation was entered on January 17, 1991. On November 26, 2001, the district court overruled Brian's initial petition for modification of custody without prejudice, stating that at the time there were "too many uncertain elements . . . to state material changes have occurred," and authorized either party or the guardian ad litem to "apply for further hearing" after Abby's spring 2002 school term. Brian applied for further hearing in August 2002. At the commencement of the 2002 hearing, the trial court stated that it did not intend to "[go] back to anything before November 7th," the date of the 2001 hearing. The judge further stated: "I want to hear the facts in this case. I want to hear if there's any change in the situation that justifies the change in custody or if it doesn't. Just that simple." Thus, we

start from the premise that as of November 7, 2001, there was no material change in circumstances which would justify modification of custody, and we therefore focus primarily upon subsequent events to determine whether such a change had occurred at the time of the November 1, 2002, hearing. This is consistent with our general rule that in determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986); *Riddle v. Riddle*, 221 Neb. 109, 375 N.W.2d 143 (1985).

We look first to the pleadings, which frame the issues. See, e.g., *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002); *City State Bank v. Holstine*, 260 Neb. 578, 618 N.W.2d 704 (2000). In his application for hearing to determine custody, visitation, and child support, filed on August 8, 2002, Brian alleged that Lori "has an unstable lifestyle" and that she had moved again since November 2001. He further alleged that Lori "has been in and out of several relationships with men having ended a relationship with the man who was the basis for her move to Pittsburgh, Kansas and Kansas City, Missouri, thereby removing the minor child from the close proximity of her father and extended family." Brian also alleged that Lori "maintains employment that call[s] for her to work evenings and overnight, leaving the minor child without proper parental supervision."

At the November 1, 2002, hearing, Lori testified that she had moved once since November 2001, because a school restructuring resulted in Abby's attending a different junior high school, and she wanted to live closer to the new school so that Abby would not be required to board a bus at 6:30 a.m. Lori further testified that she had been involved with only one man since November 2001, that she had been with that same man for 5 years, and that they were no longer living together. Lori testified that her work shift usually begins at about 8:30 p.m. She is home and awake when Abby and another child residing with Lori leave for school and when they return. She denied ever leaving her children alone. If she is required to work during the weekend, she leaves the children with a daycare provider or with her mother, who resides with the family. This testimony was not

controverted. Lori's neighbor and coworker testified that she was unaware of Lori ever leaving her children alone and that Lori is an active participant in the lives of her children.

Brian also expressed other "concerns" about Abby which he believed warranted a change in custody. These included Abby's school attendance, attire, grades, and "bossy" attitude. The record reflects, however, that Abby's grades in school are above average and that during the current term, she had missed only 2½ days of school, which were excused absences related to an illness in Lori's extended family. Brian expressed concern over a school photograph of Abby which revealed a partially exposed midriff, but he acknowledged that she had recently been dressing more conservatively. In regard to Abby's attitude, Brian would not be the first father to have detected changes in the attitude of an adolescent child. When Brian was asked specifically why he was asking the court to grant him physical custody of Abby, he replied that "for several years, many years everybody else has taken care of my child, and I think it's my turn to take care of her."

The evidence in this case is similar in nature to that in *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). In that case, a noncustodial father sought a change in custody based upon various perceived shortcomings of his former spouse, including her choice of male companions, her working hours, the fact that a houseguest often cared for the child, and problems with visitation. Reversing the trial court's modification order awarding custody to the father, we concluded that such findings did not constitute a material change in circumstances indicating that a change in custody was in the child's best interests. Similarly, in *Hoins v. Hoins*, 7 Neb. App. 564, 584 N.W.2d 480 (1998), the Court of Appeals held that a material change in circumstances was not established by evidence that the mother, who was the custodial parent, had lived with three different men in the 7 years between the divorce and the modification hearing, that the child had changed schools "on a couple of occasions," and that the mother had become disabled due to an automobile accident. *Id.* at 568, 584 N.W.2d at 483. Reversing an order that modified the decree and awarded custody to the father, the Court of Appeals reasoned that there was no showing that any of the changes in the mother's life had any adverse effect on the child or the mother's ability to care for her.

In this case, the district court concluded that Brian would provide Abby with more "stability and direction" than would Lori. We agree with the basic premise that stability is vitally important for a child, but we find no admissible evidence in the record to support the district court's conclusion that there has been a material change in Lori's ability to provide stability for Abby. The record reflects that Abby lived with Lori for her entire life prior to the modification order, except for the few weeks during the late summer of 2001 when the parties agreed that she would live with Brian. There is no evidence that Lori has become an unfit parent or that she has been unable to provide for Abby's physical or emotional needs as a result of any change in circumstances. Based upon our review of this modification proceeding, which has now spanned more than 3 years, we conclude that the district court abused its discretion in modifying custody.

## CONCLUSION

The district court did not err in exercising its jurisdiction over this modification proceeding. However, based upon our de novo review of the admissible evidence in the record, we conclude that the court abused its discretion in finding that there was a material change in circumstances which justified a modification of the original decree to remove Abby from the physical custody of Lori and award custody to Brian. Accordingly, the order of modification is reversed, and we order that Abby be restored to the custody of Lori, subject to Brian's right of reasonable visitation. Because we lack knowledge of the parties' current circumstances but perceive their need for a highly detailed and specific visitation order, we remand the cause to the district court with direction to fashion such an order.

REVERSED AND REMANDED WITH DIRECTION.