IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL

WATHOR V. SWIFT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHRISTOPHER M. WATHOR, APPELLANT,
V.
JESSARAE A. SWIFT, APPELLEE.

Filed October 22, 2013.    No. A-13-185.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Terrance A. Poppe and Benjamin D. Kramer, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellant.

Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Christopher M. Wathor appeals from an order of the district court for Lancaster County denying his request for a change of custody of his son, Colby Wathor. Because we find that no material change of circumstances has occurred to warrant a change of custody from Colby's mother, Jessarae A. Swift, to Wathor, we affirm.

### BACKGROUND

Wathor and Swift are the biological parents of Colby, born in March 2003. The parties were never married, but dated from 1999 to 2006, and lived near Hickman, Nebraska, during their relationship. From the time Colby was born until the parties' relationship ended in December 2006, the parties lived in the same home with Colby. Following their separation, Colby lived with Swift and both parties continued to live in or near Hickman.

In April 2008, Wathor filed a complaint for paternity, seeking establishment of paternity, custody, and child support. In October, the trial court entered an order of paternity, finding that Wathor is the biological father of Colby and awarding Swift legal and physical custody of Colby, subject to Wathor's reasonable rights of parenting time. Wathor was awarded parenting time every other weekend, every Wednesday evening, and alternating holidays. His summer parenting time consisted of three 1-week periods in 2009 and increased to alternating 1-week periods in 2012.

The order of paternity prohibited Wathor from consuming any alcohol during his parenting time or 24 hours prior to parenting time; prohibited him from taking Colby to any location where alcohol was served; ordered that Wathor was not to allow alcohol to be consumed by other persons present during parenting time; and ordered that Wathor provide an alcohol test to Swift prior to, and at the end of, every parenting time.

In June 2011, Wathor filed a complaint for modification, alleging that there had been a material change of circumstances since the entry of the order of paternity and seeking custody of Colby. The material changes alleged included that Swift's lifestyle and living arrangements are not appropriate for Colby; Swift does not adequately provide for the daily needs and necessities of life for Colby; Swift planned to move to Randolph, Nebraska, and such move would adversely impact Wathor's parenting time with Colby; Swift interferes with Wathor's parenting time; and Swift attempts to alienate Colby from Wathor.

Trial was held on Wathor's complaint for modification in October 2012. The evidence showed that in August 2011, Swift and Colby moved to Randolph, which is about 170 miles from Hickman, or about a 3-hour drive. Swift and Colby moved to Randolph with Swift's boyfriend, Brandon Backhaus, who had taken a job in Norfolk, Nebraska, which is near Randolph. Backhaus started the new job in February 2011, but Swift and Colby remained in Hickman while Backhaus made sure that he liked the job before Swift made a final decision to move to Randolph. The job in Norfolk offered Backhaus an increase in pay, did not involve traveling like his previous job, and had opportunities for advancement. Backhaus had been earning $33,000 per year at his previous job. His starting salary at the Norfolk job was $48,000.

At the time of trial, Swift and Backhaus had been dating and living together for about 6 years, with Colby living with them all that time. Colby and Backhaus have a good relationship and enjoy spending time together. Backhaus often helps Colby with his homework and was one of Colby's football coaches.

Before moving to Randolph, Swift worked for an insurance company in Lincoln, Nebraska, and was able to transfer with that same company to its Norfolk office when she moved. After about 7 months, Swift was "let go" because she did not pass a test required for her to get her insurance license. At the time of trial, Swift was working at "True Value" in Randolph, which store is located a block from the house she and Backhaus were renting, and four blocks from Colby's school.

Swift does not have any family in the Randolph area, but Backhaus grew up there. Swift was born and raised in the Hickman area, and her parents and siblings all live in the area. Wathor's parents and siblings live in the Hickman area as well. Swift admitted that Colby does not see his relatives as much as he did when he lived in Hickman, but she does not believe his relationship with them has changed.

Prior to Swift's move to Randolph, Colby attended kindergarten, first grade, and second grade at Norris Elementary School (Norris Elementary) near Hickman. Colby struggled with school from the beginning, and Colby's teachers at Norris Elementary recommended that he attend summer school after each school year. Colby has never gone to summer school. Swift testified that she and Wathor agreed that it was not possible for Colby to attend summer school, because neither of them could get Colby to and from school due to the hours that summer school was offered and because she and Wathor both worked in Lincoln. Colby's second grade teacher also recalled that transportation was the reason Colby did not attend summer school after second grade. Wathor testified that Swift told him she did not want Colby to take summer school, because it would interfere with Wathor's summer parenting time. He testified that he told Swift that he or his wife could get Colby to summer school during the weeks Colby was with him.

Colby's teachers at Norris Elementary implemented several programs to help Colby keep up academically with his grade level. He received help with reading and mathematics in small group settings outside of the regular classroom. Colby's second grade teacher testified that she had meetings with Swift throughout the year about Colby and that Swift was interested in Colby's progress, was communicative, and was helpful. When Colby left Norris Elementary after second grade, his scores on standardized testing were well below his grade level.

After the move to Randolph, Colby attended Randolph Public School (Randolph Public) for third grade and was in fourth grade at the time of trial. Randolph Public operates on a modified 4-day school week, rather than the traditional 5-day week. During most weeks, students do not have school on either Monday or Friday, but there are also some 5-day weeks.

At the back-to-school open house for third grade, Swift introduced herself to Colby's teachers and informed them of Colby's educational needs. She wanted to make sure that he would get the extra help he needed when the school year started. Based on Swift's statements and Colby's records from Norris Elementary, Randolph Public tested Colby to determine if he had any learning disabilities. The results showed that Colby has a learning disability, primarily in the area of reading. Based on the results, Randolph Public implemented special programs for Colby. Colby received instruction with one or two other students in the "resource" room for reading, phonics, and spelling. This service allowed Colby to follow the same curriculum as his classmates but move at a slower pace if needed. Colby also received assistance from a special education teacher.

Latricia Olson, one of Colby's third grade teachers, testified that by the end of third grade, Colby's attitude had improved, he was more confident, and he worked more independently. Olson also testified about Colby's progress based on a standardized test the school district gives to students each year in September and again in March that measures a child's progress during the school year. Olson testified that Colby surpassed the expected improvement gains set for him in reading, language arts, and mathematics.

Olson acknowledged that many of Colby's grades went down from first semester to second semester. She further testified that a child's report card is only part of the picture when looking at progress. She testified that certain aspects of progress--like attitude, confidence, and willingness to work--cannot be measured by a number.

Olson testified that she had no behavioral issues with Colby in the classroom. She testified that Colby came to school dressed appropriately, was clean, and appeared rested.

Olson testified that Swift seemed interested in Colby's progress. She stated that throughout the school year, Swift attended meetings regarding Colby's educational needs. She testified that if Swift had an issue or concern about something, she discussed it with the teachers and was always professional and calm about it.

Jiennifer Isom-Backer was another third grade teacher of Colby's and was Colby's fourth grade mathematics and writing teacher at the time of trial. She testified that she had seen positive changes in Colby since he first started school at Randolph Public. She testified that he wants to work independently and is much more confident. She also testified that Colby gets all his work done, is organized, turns in his homework every day, and is respectful. Isom-Backer also testified that Colby was doing well in mathematics while many other students were struggling.

Isom-Backer testified that when Colby was first given a certain standardized test at Randolph Public, he tested well below normal for his grade level and well below the average for the school district. She testified that his most recent test results at the time of trial showed that he was moving closer to the district average and that he had shown significant improvement.

Isom-Backer testified that she communicated with Swift throughout the school year by e-mail and that Swift always timely responded to communication. She testified that Colby is dressed appropriately and seems to be well rested.

At the time of trial, Wathor had been married since June 2011. He and his wife live in Hickman in a four-bedroom house and were working on finishing a fifth bedroom. Wathor and his wife had one child together and were expecting their second child. Wathor's wife also has a child from a previous relationship.

Wathor was asked about his compliance with the alcohol restrictions in the paternity order. He testified that from the time the paternity order was entered until Swift moved to Randolph, he did not consume alcohol when Colby was with him. He testified that during that time he provided Swift with an alcohol test of his breath every time he picked Colby up and brought Colby back and that he never tested positive for alcohol. He admitted that after Swift moved, there were times when he did consume alcohol in Colby's presence. He testified that he no longer provides the alcohol test before and after parenting time, because Swift does not ask him to.

Following trial, the court entered an order for modification finding that a material change in circumstances had occurred in that Swift and Colby had moved to Randolph. The court further found that it was in Colby's best interests that legal and physical custody remain with Swift, and it denied Wathor's request for a change of custody. It modified Wathor's parenting time due to Swift's move to Randolph and modified Wathor's child support obligation.

ASSIGNMENT OF ERROR

Wathor assigns that the trial court erred in denying his request for a change of custody of Colby.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643

(2013). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Wathor argues that the trial court erred in denying his request for a change of custody of Colby. Wathor contends that a change of custody is warranted based on Swift's relocation to Randolph. Specifically, he argues that Swift's decision to move to Randolph was rash and irresponsible, that Norris Elementary is a better school for Colby than Randolph Public, and that he can better provide Colby with long-term stability. We find no abuse of discretion by the trial court.

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

Based on our de novo review of the record, we find that Wathor failed to demonstrate a material change of circumstances to warrant a change of custody. The evidence showed that Swift and Colby moved to Randolph because Backhaus, Swift's boyfriend of 6 years, took a job with more pay, less travel, and the opportunity for advancement. Swift did not immediately move to Randolph when Backhaus started the job. Rather, she and Colby remained in Hickman for about 5 months so that Backhaus could determine whether he liked the job before Swift made a final decision to move.

Although Swift and Backhaus were not married, they had been together as a couple for 6 years. Both of them indicated that although they had no immediate plans to get married, they did plan to get married in the future, and that they considered themselves in a committed relationship.

Swift and Backhaus live in a five-bedroom house that is located three blocks from Colby's school and one block from where Swift works. Because Swift works close to home, she spends less time commuting to and from work and more time with Colby. The evidence also shows that Colby has adjusted well to living in Randolph. He has made friends and is involved in extracurricular activities.

There is no evidence that the intent of Swift's move was to interfere with Wathor's parenting time. She testified that was not the purpose of her move. In fact, after she moved, she offered to let Wathor have an extra day of parenting on the weekends due to Colby's school schedule and also offered to meet him halfway between Hickman and Randolph.

In regard to school, Colby has struggled with school since kindergarten and received special assistance when he attended Norris Elementary. When Swift and Colby moved to Randolph, Swift told the teachers at Randolph Public about Colby's educational needs and that he had been receiving extra help at his former school. Randolph Public had Colby tested and determined that Colby had a learning disability. Upon learning of the disability, the school

implemented programs and assistance to help Colby. Colby's third grade teachers both testified that he is doing well in school and has made good progress, is meeting or has exceeded expected improvement goals, and is testing closer to the average for the school district. His attitude, confidence, and willingness to work independently have all improved. His teachers further testified that he comes to school dressed appropriately and appears well rested. He also is respectful and not a behavioral problem. The evidence also shows that Swift is concerned about and interested in Colby's progress. Swift attends meetings regarding Colby and communicates with the teachers.

Wathor argues that Randolph Public is inferior to Norris Elementary because it does not offer summer school and operates on a modified 4-day school week. However, Wathor presented little to no evidence in support of his argument. Olson testified that one negative effect of a 4-day school week is that students can have over-the-weekend learning loss. However, Isom-Backer testified that the schooldays are longer than they are for a school operating on a 5-day school week, allowing students more one-on-one attention during the day. She also testified that the absentee level for students and teachers is much lower than it is in a 5-day school week, and that students are more rested when they come back to class after a 3-day weekend. The evidence also showed Randolph Public's schedule meets the State of Nebraska's classroom hours requirement.

In regard to summer school, Colby never attended summer school at Norris Elementary when it was offered and recommended. The fact that summer school is not offered at Randolph Public cannot be viewed as a disadvantage of Colby's attending school there. Randolph Public provides Colby with extra help during the school year due to his learning disability, and his teachers have been pleased with the progress he has made. The lack of summer school is not a hindrance to his educational progress.

We determine that Wathor failed to meet his burden to show that Swift is unfit or that it would be in Colby's best interests to change custody from Swift to Wathor. The changes that have occurred due to Swift's relocation to Randolph do not rise to the level of a material change in circumstances warranting a change of custody, because they do not negatively affect Colby. Colby is well-adjusted in Randolph and is doing well under the current arrangements. The trial court properly found that custody of Colby should remain with Swift.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in finding that Wathor did not prove that a material change in circumstances had occurred warranting a change of custody of Colby. As such, we affirm the trial court's order that physical custody of Colby remain with Swift.

AFFIRMED.