IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


YAEGER V. FENSTER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MATTHEW R. YAEGER, APPELLEE,

V.

TAMARA K. FENSTER, APPELLANT.


Filed March 13, 2018.     No. A-17-452.


Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed in part, and in part reversed and remanded with directions.

Tamara K. Fenster, pro se.

Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers, & Ahl, L.L.P., for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

INTRODUCTION

Tamara K. Fenster appeals from an order of the district court for Lancaster County which modified custody of the parties' two children and ordered Fenster to pay child support. In her brief on appeal, Fenster failed to include a separate section assigning error in the district court's order. We therefore have reviewed the record for plain error. Having found error in the court's child support calculation, we affirm in part, and in part reverse and remand with directions.

BACKGROUND

Fenster and Matthew R. Yaeger have never been married, but have two children together, Shyanne, born in 2003, and Alexander, born in 2005. The original order for custody and support, regarding Shyanne only, was entered in July 2004. At that time, the parties entered into a stipulation agreeing that they would have joint physical custody of Shyanne and that neither party

- 1 -

would be required to pay child support. The joint custody arrangement split custody equally, but allowed the parties to work out the details of their custody arrangement, with the exception that they were given a schedule for holidays if they could not agree. Yaeger testified that they traded holidays frequently enough that it became confusing as to which parent should have what holiday from year to year. There was no provision specifically addressing legal custody, and their stipulation provided that they were to cooperate with the decision making and "in the event the parties [were] unable to reach a consensus with respect to such a decision, the parties shall attempt to mediate a solution prior to filing legal action."

The original order was modified in April 2005, in that Yaeger was ordered to pay $132 per month in child support. It was later modified again in December 2006, after Alexander was born. At that time, the parties stipulated to a joint custody arrangement for both children and again agreed that neither party would be required to pay child support.

On November 2, 2015, Fenster filed a complaint for modification, seeking sole custody of the parties' two children and child support from Yaeger. Yaeger filed an answer and counterclaim for modification, also asking for sole custody and child support from Fenster.

The evidence presented at trial showed that for the past 6 to 8 years, based on an oral agreement between the parties, Yaeger had the children on Thursdays after school to Sunday mornings at 10:00 a.m. and alternating Tuesdays. Fenster had the children from Sundays at 10:00 a.m. to Thursdays after school and alternating Tuesdays, with one Saturday per month.

At the time of the last modification, the parties were both living in Lincoln, Nebraska. At the time of trial, Yaeger had moved to Ashland, Nebraska. He was living with his girlfriend and her children in a two-bedroom apartment. Yaeger recognized that the housing situation was crowded and not ideal, and he was looking for a larger place to live. He had previously lived with his mother in Lincoln but the home she was renting sold and they had to move out. Fenster continued to live in Lincoln but testified that she intended to move to Omaha, Nebraska, after the school year ended because she was working in Omaha. She was living in a four bedroom duplex with her boyfriend, as well as her 5-year-old daughter from another relationship.

The evidence showed that Alexander has been diagnosed with Attention Deficit Disorder and has some behavioral issues, which include tantrums or fits of rage. Fenster testified that he has also been diagnosed with Disruptive Mood Dysregulation Disorder and Compliance Disorder. Fenster selected a therapist for Alexander, whom he had been seeing for several years, and sessions had been taking place at Fenster's home. Yaeger did not participate in Alexander's therapy and did not believe that it was effective.

Alexander was on medication to help treat his disorders. Fenster did not believe that Yaeger gave Alexander his medication on a regular basis, but Yaeger insisted that he did, and testified that he sets alarms to help him remember when Alexander needs his medication.

Fenster testified that the children are on Medicaid, but that they are also covered by health insurance through her employer. She testified that the cost of health insurance is $110 per month for family coverage and her paystub reflected a $110 deduction for "Health POP EE P."

Yaeger testified that Fenster refused to give him the children's Medicaid card, which made it difficult, if not impossible, to take the children to the doctor. Fenster testified that she had given Yaeger a copy of the card.

Fenster argued that Alexander needs a structured environment and that Yaeger was too relaxed in his parenting. Yaeger agreed that Alexander needs a structured environment and presented evidence that he provides structure in the home and that the children have rules to follow and chores to do.

Each party has accused the other of treating the children inappropriately. About 1 year before trial, Fenster accused Yaeger of sexually abusing Shyanne and filed a protection order against him. This allegation occurred around the same time the police were investigating Fenster for slapping Alexander. There was another incident where Fenster threw a video game controller at Alexander and left a bruise on his arm. Fenster admitted to both occurrences. Fenster was charged with child abuse as a result of the game controller incident.

Fenster testified that it has been hard to cooperate with Yaeger the past few years and it had become impossible to continue joint custody. She believed awarding her sole custody was in the children's best interests. Yaeger testified that communication had broken down between the parties and Fenster was sharing very little information with him about the children.

Following trial, the court entered an order of modification finding that there had been a material change in circumstances affecting the best interests of the children. Specifically, the court found there had been a breakdown in communication between the parties, a change in Yaeger's residence, and a change in the living arrangements of both parties. The court ordered that the parties should continue to have joint physical and legal custody of the children, but it entered a new parenting plan to provide structure to the parenting time each party would have with the children and to minimize conflict between the parties. The parenting plan provided that the parties would have physical custody of the children on alternating weeks from Sunday to Sunday. In regard to legal custody, the court ordered that Yaeger would have primary decision making authority regarding the children's education and extra-curricular activities, and Fenster would have primary decision making authority regarding the children's religious upbringing and their medical needs. It also ordered that both parties shall agree upon any mental health care provider who provides services to the parties' children. Further, the court adopted the child support calculation provided by Yaeger and ordered Fenster to pay $156 per month in child support.

ASSIGNMENTS OF ERROR

Fenster failed to include in her brief on appeal a separate section assigning error in the district court's order of modification. The Nebraska Supreme Court has emphasized that headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev.2012). *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Under that rule, a party is required to set forth the assignments of error in a separate section of the brief, with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignments of error section a separate and concise statement of each error the party contends was made by the trial court. *In re Interest of Samantha L. & Jasmine L., supra*. We enforce these requirements.

STANDARD OF REVIEW

An appellate court reviews child custody determinations de novo on the record, but the trial court's decision will normally be upheld absent an abuse of discretion. *Flores v. Flores-Guerrero*,

290 Neb. 248, 859 N.W.2d 578 (2015). However, where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L., supra.* Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

ANALYSIS

Because Fenster's brief fails to comply with § 2-109(D)(1)(e), we review the record for plain error.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. See *Heistand v. Heistand, supra*.

The trial court found that there had been a material change of circumstances affecting the best interests of the children in that there was a breakdown in communication between the parties, a change in Yaeger's residence, and a change in the living arrangements of both parties. The court ordered that the parties should continue to have joint physical custody of the children, but it entered a new parenting plan consisting of alternating weeks of parenting time.

As the court found, the evidence established that the parties had difficulty communicating and getting along. The evidence also showed that Yaeger had moved from Lincoln to Ashland and that both parties were now living with significant others. However, the parties have had a joint physical custody arrangement for many years and there was no indication that the parties could not continue to make a joint custody arrangement work. The parties had stipulated to an equal time custody arrangement, but nothing was put in writing as to what specific days and times each party would have custody. For the past 6 to 8 years, Yaeger had the children on Thursdays after school to Sunday mornings at 10 a.m. and alternating Tuesdays. Fenster had the children from Sundays at 10 a.m. to Thursdays after school and alternating Tuesdays, with one Saturday per month.

The court ordered that the parties should continue to have joint physical custody, but modified custody by ordering alternating weeks of parenting time. The court found such a schedule would provide structure to the parenting time each party would have with the children and would minimize conflict between the parties. As previously stated, parenting times had not been set out in writing before. Because the parties now live in different towns, the alternating weekly arrangement provides for less exchanges between the parties and is more convenient for both parties. It also reduces the number of times that the parties see each other. The longer, settled periods of time at each parent's home under the alternating weekly schedule will allow for more quality time in each household since it will reduce the frequency and time necessary to get the

children packed up with personal, school, and other miscellaneous items, especially since the parties are living in different towns. The evidence showed that both parents had flaws and there were certain qualities of each parent that weighed in favor of and against each parent. However, it was clear that both parties love their children and both are capable of parenting their children and taking care of Alexander's disorders. We find no plain error in the court's modification of physical custody.

As to legal custody, the court left joint custody intact, but divided who had the final say for major decision areas. It gave Yaeger primary decision making authority regarding the children's education and extra-curricular activities, and Fenster primary decision making authority regarding the children's religious upbringing and their medical needs. The court's division of decision making authority protected the decision making ability of each parent and minimizes conflict between the parties. There is no plain error in regard to the court's modification of legal custody.

In regard to child support, the court adopted the child support calculation offered by Yaeger and ordered Fenster to pay $156 per month in child support. The calculation did not take into account any health insurance premium paid by Fenster. Fenster testified that the children are on Medicaid, but she also testified that the children are covered by health insurance provided by her employer. She testified that the cost of health insurance is $110 per month for family coverage and her paystub reflected a $110 deduction for "Health POP EE P." We conclude that the court committed plain error in its child support calculation in that it failed to give Fenster a deduction for health insurance premiums. Therefore, we reverse the court's child support calculation and remand with directions to recalculate Fenster's obligation taking into consideration the amount she pays for health insurance premiums.

## CONCLUSION

Because Fenster failed to comply with § 2-109(D)(1) regarding assignments of error, our review is limited to an examination of the record for plain error. We find no plain error in the court's modification of physical and legal custody, but conclude that the court erred in calculating child support. Accordingly, we reverse the court's child support calculation and remand with directions to recalculate Fenster's obligation consistent with this opinion. The remainder of the court's order of modification is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.