State of Nebraska on behalf of Savannah E. and
Catilyn E., minor children, appellee, v. Kyle E.,
appellee, and Amanda W., appellant.

___ N.W.2d ___

Filed October 15, 2013.    No. A-12-1027.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Modification of Decree: Child Support: Appeal and Error.** Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

4. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

5. **Child Custody.** In cases where a noncustodial parent is seeking sole custody of a minor child while simultaneously seeking to remove the child from the jurisdiction, a court should first consider whether a material change in circumstances has occurred and, if so, whether a change in custody is in the child's best interests. If this burden is met, then the court must make a determination of whether removal from the jurisdiction is appropriate.

6. ____. Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

7. **Child Custody: Proof.** The party seeking modification of child custody bears the burden of showing a material change in circumstances.

8. **Modification of Decree: Child Custody: Evidence: Time.** In determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time.

9. **Child Custody.** In determining a child's best interests, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient

age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child.

10. ____. In relocation cases, a parent must first satisfy the court that he or she has a legitimate reason for leaving the state.

11. **Child Custody: Proof: Visitation.** Once the threshold burden of showing a legitimate reason for leaving the state has been met, the court then determines whether removal to another jurisdiction is in a child's best interests, which in turn depends on (1) each parent's motives for seeking or opposing the move, (2) the potential the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements.

Appeal from the District Court for Kimball County: Derek C. Weimer, Judge. Affirmed.

Audrey M. Elliott, of Kovarik, Ellison & Mathis, P.C., for appellant.

Leonard G. Tabor for appellee Kyle E.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Moore, Judge.

## I. INTRODUCTION

Kyle E. and Amanda W. are the biological parents of two minor children, Savannah E. and Catilyn E. In 2005, Kyle and Amanda agreed that Amanda would have primary physical custody of Savannah and Catilyn and that Kyle would have liberal visitation time. This custodial arrangement remained intact until January 2011, when Kyle filed a motion to modify custody of the children. In the motion, he asked that he be awarded primary physical custody. After a hearing, the district court granted Kyle's request. Amanda appeals from the court's decision here.

On appeal, Amanda alleges that the district court erred in granting Kyle's motion to modify custody, because Kyle failed to prove that a material change of circumstances had occurred since 2005 when the parties agreed that Amanda would have primary physical custody of the children and because Kyle failed to demonstrate that a change in custody was in the

girls' best interests. Upon our de novo review of the record, we affirm.

## II. BACKGROUND

These proceedings involve Savannah, born in March 2003, and Catilyn, born in December 2004. Amanda is the children's biological mother, and Kyle is their biological father. Amanda and Kyle have never been married to each other.

### 1. Procedural History

In July 2005, Amanda and Kyle entered into a stipulation concerning custody of Savannah and Catilyn. As a part of the stipulation, they agreed that Amanda would maintain physical custody of the girls and that Kyle would be awarded liberal visitation time. On July 19, the district court entered an order reflecting the terms of the parties' stipulation.

On January 20, 2011, more than 5 years after the parties agreed that Amanda would maintain physical custody of the girls, Kyle filed a motion to modify that custody arrangement. In the motion, he alleged that a material change of circumstances had occurred since he entered into the custody agreement with Amanda. Specifically, he alleged that both parties had married, that Amanda had a baby with her new husband, that Savannah occasionally takes care of Catilyn and Amanda's new baby, that Amanda spends a lot of time in the bars, that the girls and their clothing are usually dirty when they come to visit Kyle, that the girls are occasionally late for school, and that Amanda has been neglecting the children and is no longer a fit and proper parent to have permanent custody of the children. In addition, he alleged that in December 2010, Amanda was arrested for domestic assault. Kyle requested that he be awarded physical custody of the girls, that Amanda be ordered to pay child support, that the court establish a visitation schedule, and that he be granted permission to move the children to the State of Wyoming.

On February 17, 2011, Amanda filed an answer and a cross-complaint to modify. Amanda denied that there had been any material change of circumstances warranting a modification of the original custody arrangement. However, she alleged that

there had been a material change of circumstances warranting a modification of Kyle's child support obligation.

While the modification action was pending in the district court, Amanda informed Kyle that she was planning on moving from Nebraska to Colorado in order to assist an ailing relative. Prior to informing Kyle about her plans, Amanda had removed the children from their school and was preparing for the move. Kyle immediately filed an ex parte motion requesting temporary custody of the girls so that Amanda could not remove them from Nebraska. The district court granted Kyle's request on February 13, 2012, and awarded him immediate, temporary custody of Savannah and Catilyn. Kyle moved the children to his home in Pine Bluffs, Wyoming, and enrolled them in school.

One week later, on February 21, 2012, a hearing was held to determine whether Kyle should maintain temporary custody of the girls pending the modification hearing. The evidence presented at the hearing revealed that although Amanda had planned on moving to Colorado, she had since decided to remain in Nebraska. In addition, there was evidence that Amanda did not know that she could not move with the children outside of Nebraska and that she did not intend the move to affect Kyle's visitation in any way. The evidence revealed that if Amanda moved to Colorado, she would still live only approximately 1½ hours away from Kyle's home in Wyoming.

Because Amanda had decided not to move out of the state, the court returned the girls to her custody pending the modification hearing. The court ordered Kyle to return the girls to Amanda and ordered Amanda to enroll them again in school.

In September 2012, a hearing was held on Kyle's request to modify custody and on Amanda's request to modify Kyle's child support obligation. At the hearing, Amanda and Kyle both presented evidence about their relationships with Savannah and Catilyn and about their current circumstances.

## 2. Amanda's Evidence

Amanda testified that at the time of the modification hearing, she was living in a home in Dix, Nebraska, with Savannah

and Catilyn and her youngest daughter, who was approximately 3 years old. Amanda was working part time as a nurse's aide for a disabled individual, and she was enrolled at a community college. However, she had not yet started attending any classes, because she was waiting for funding.

Amanda had married Robert G. in March 2009. They were still married at the time of the modification hearing, but Amanda testified that they were separated and planned to get a divorce.

Amanda and Robert's marriage has been tumultuous. Both Amanda and Robert have requested protection orders against each other. Robert filed for protection orders against Amanda in January and April 2011. Robert alleged that Amanda was physically violent with him and threatened to cause him harm. Amanda was arrested for domestic assault in April 2011 as a result of Robert's assertions. Amanda filed for a protection order against Robert in November 2010 or 2011. During her testimony at the modification hearing, she indicated that she requested the protection order because she was "physically scared." She testified that even though Robert has never caused her to suffer any physical injuries, she has felt threatened by him because he is bigger and stronger and sometimes things get "out of . . . control."

Robert testified that none of the incidents between him and Amanda occurred "in front of the kids." He testified that he could not specifically remember if the girls were present in the house during the incidents or if they were with Amanda's mother, but he did testify that if the children were at home, they would have been upstairs in their bedrooms. There was no other evidence to indicate that the girls were ever physically present during the incidents between Amanda and Robert or that they had any knowledge of what had occurred during these incidents.

Amanda has a criminal history. Since 2005, when the parties entered into the original custody agreement, Amanda has been convicted of domestic assault, possession of marijuana, failure to appear, and issuing a bad check. She has also been convicted of disturbing the peace on two separate occasions. During the pendency of the modification proceedings, in August 2012,

Amanda was arrested for driving under the influence. In the days prior to the modification hearing, she pled no contest to that charge and her license was suspended. Savannah and Catilyn were not with Amanda on the day of that incident. Amanda testified that on two occasions, she spent a few nights in jail as a result of being arrested. However, there was no evidence that she had spent any significant time in jail away from the children.

Amanda has moved multiple times since the entry of the 2005 custody agreement. She testified that she has lived in approximately seven different residences since 2005, including her parents' house and her uncle's house while he was residing outside of the country.

Amanda has had multiple jobs since 2005. She has worked at a few restaurants and bars, a daycare, various professional offices, and other, various "odd jobs." She has not worked at any one place for a significant period of time. Amanda testified that she considers herself to be a stay-at-home mother. She indicated that she is willing to work if she needs to, but that it is important to her to be available for her children. Amanda also admitted that recently, she has struggled to find any employment as a result of her criminal history.

Amanda presented evidence to demonstrate that she is very involved in her children's lives. She testified that Savannah and Catilyn are very active in Girl Scouts. In addition, they participate in soccer, softball, and swimming. Savannah also sings in a musical group. Amanda testified that both Savannah and Catilyn are good students who are thriving in school. She indicated that she regularly communicates with the girls' teachers about how they are doing. She testified that they are both healthy and happy girls.

In addition, Amanda testified that she does her best to communicate and work with Kyle concerning his visitation time and that she is willing to maintain such efforts if she continues to have physical custody of the girls. In fact, there was evidence that Amanda has permitted the girls to spend a significant amount of additional time with Kyle during the summer months and that she has told the girls that when they want to see their father, they just have to tell her.

### 3. Kyle's Evidence

At the time of the modification hearing, Kyle was living with his wife and their infant son. Kyle and his wife married in December 2010 and have resided in Pine Bluffs since that time. Kyle testified that he and his wife plan on remaining in Pine Bluffs.

Kyle currently works as a wind turbine technician and has been with the same company for 4½ years. He indicated that he plans on keeping his same employment for the foreseeable future.

Kyle testified that when he has visitation with his daughters, they engage in a variety of family activities, including attending various high school sporting events, watching movies, playing outside, playing video games, and spending time with Kyle's extended family. In addition, Kyle and his wife have taken the girls to do special activities in the Denver, Colorado, area, including going to a Denver zoo, viewing a dinosaur exhibit, and playing at a water park. Kyle testified that Savannah and Catilyn are happy and well-behaved children.

Kyle did present evidence that during the 2011-12 school year, the girls were absent from school approximately 10 days and were tardy approximately 6 days. However, there was no evidence to explain why the girls were absent or tardy from school, nor was there any evidence that such absences were unusual or excessive.

Kyle believes it is in Savannah's and Catilyn's best interests to live with him on a full-time basis. He testified that he can provide the girls with everything they need because he has a stable lifestyle and because both he and his wife have full-time, steady jobs. To the contrary, Kyle believes that Amanda is an unfit mother because she does not have steady employment and is unable to support herself and the girls. Further, Kyle testified that he is concerned that Amanda does not spend much time with the girls and that she does not "take as good of care of them as she used to." Kyle is also concerned that Amanda is using marijuana, although he admitted that he did not have any personal knowledge concerning Amanda's drug use.

Kyle told the district court that if he is awarded physical custody of Savannah and Catilyn, he is willing to be flexible with Amanda in permitting her to see the girls often. He also testified that he does not speak negatively about Amanda in front of the children. However, during cross-examination, Kyle admitted that he told the girls that Amanda was "on drugs."

### 4. District Court Order

After the modification hearing, the district court entered a detailed order granting Kyle's request to modify the original custody arrangement such that he be awarded primary physical custody of Savannah and Catilyn. The court conducted a three-part analysis: It first considered whether there had been a material change of circumstances since the 2005 custody agreement, it then considered whether the best interests of the children required modification of custody, and it lastly considered whether relocation of the children from Nebraska to Wyoming should be ordered.

The court first found that there had been a material change in circumstances since the 2005 custody agreement. Specifically, the court indicated:

> The juxtaposition of the two lives of the [parties] establishes [such a] change. [Amanda's] life has been marked by changes in residence, changes in employment, criminal charges and convictions, and marital difficulties. By contrast, [Kyle's] life is marked by stability: in residence, in relationships, in employment. The minor children in this case have been moved at least seven times since the parties separated. They have been moved to three different school districts . . . . This is sufficient evidence of a material change of circumstances.

The court next found that "it would be in the best interests of the minor children that custody be modified." In reaching this conclusion, the court analyzed the various statutory and case law factors concerning best interests. See, Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012); Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 2012); *Klimek v. Klimek*, 18 Neb. App. 82, 775

N.W.2d 444 (2009). The court found that both parents enjoy a positive and healthy relationship with the children; that they are typical, healthy, and well-adjusted children and they do well in school; that there has been no abuse between the parents or involving the children (although the court noted the domestic assault allegations between Amanda and her husband); that the other familial relationships would not be detrimentally impacted by a change of custody, because the children would not be going far away; and that both parties have the capacity to provide for the children's physical care and satisfy their educational needs. The court went on to find that Amanda has had legal problems and relationship difficulties which reflect on her moral fitness, whereas Kyle has a stable and solid marriage; has found and maintained good, long-term employment; and has maintained a residence in one place for an extended period of time. The court found that Kyle offered a more stable environment for the children due to the stability of his home, employment, and relationships as compared to Amanda. The court found that the "attitude and stability of [Amanda's] character is decidedly less stable than that of [Kyle's]."

The court then analyzed the factors regarding relocation from Nebraska to Wyoming as set forth in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). The court found that Kyle had a legitimate reason to relocate the children to Wyoming. In concluding that it was in the best interests of the minor children to relocate to Wyoming, the court found that neither party seems to be "ill-motivated" in his or her position regarding relocation, that the children's quality of life will be improved by relocation, that the parties live only about 40 miles apart, and that the relocation of the children to Wyoming would not detrimentally impact Amanda's ability to have meaningful parenting time.

After granting Kyle's request for a modification of custody and awarding him physical custody of Savannah and Catilyn, the district court ordered Amanda to pay Kyle child support in the amount of $50 per month.

Amanda appeals from the district court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Amanda asserts that the district court erred in modifying the parties' 2005 custody agreement by awarding Kyle sole physical custody of Savannah and Catilyn. In addition, Amanda alleges that if we reverse the district court's decision to modify custody, we should also reverse the court's decision concerning the parties' child support obligations.

## IV. ANALYSIS

### 1. Standard of Review

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

[2] Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

[3] A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id*.

[4] When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

### 2. Modification of Custody

On appeal, Amanda argues that the court erred in modifying the custodial arrangement by awarding Kyle sole physical custody of Savannah and Catilyn. We begin our analysis with a discussion of the procedural posture of this case. This case presents an unusual factual situation wherein the noncustodial parent is seeking a modification of custody and at

the same time is seeking permission to remove the children from the state. We have not found any reported cases, nor have the parties directed us to any, with a similar factual situation. Generally, removal cases present to us when a custodial parent seeks to move with the children out of state. See, e.g., *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002); *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999); *Maranville v. Dworak*, 17 Neb. App. 245, 758 N.W.2d 70 (2008); *Wild v. Wild*, 15 Neb. App. 717, 737 N.W.2d 882 (2007).

In *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000), the parents shared joint legal and physical custody of the children and the mother sought permission to modify the decree by awarding her sole custody of the children and granting her permission to move them to another state. The Nebraska Supreme Court enunciated a two-part analysis in which it required that the parent seeking modification first prove a material change in circumstances affecting the best interests of a child by evidence of a legitimate reason to leave the state, together with an expressed intention to do so. Once the party seeking modification has met this threshold burden, the separate analyses of whether the custody should be modified and whether removal should be permitted become intertwined.

[5] In the case of a noncustodial parent seeking a modification of custody and removal from the jurisdiction, we conclude that the approach utilized by the district court in this action was appropriate. We hold that in cases where a noncustodial parent is seeking sole custody of a minor child while simultaneously seeking to remove the child from the jurisdiction, a court should first consider whether a material change in circumstances has occurred and, if so, whether a change in custody is in the child's best interests. If this burden is met, then the court must make a determination of whether removal from the jurisdiction is appropriate.

(a) Material Change in Circumstances

Amanda asserts that the district court erred in concluding that there has been a material change in circumstances since the entry of the 2005 custody agreement. Upon our de novo

review of the record, we conclude that Amanda's assertion is without merit.

[6,7] Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The party seeking modification of child custody bears the burden of showing a material change in circumstances. See *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004).

The Nebraska Supreme Court has previously explained the type of situation which constitutes a material change in circumstances. In *Hoschar v. Hoschar*, 220 Neb. 913, 915, 374 N.W.2d 64, 66 (1985) (*disapproved on other grounds, Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989)), the court explained:

> By this rule we do not mean that every change, no matter how insignificant, justifies a change in custody. Rather, by material change of circumstances we mean that the evidence must show that something has occurred, which if the trial court had been aware of the existence of these circumstances initially, the trial court in the best interests of the children would have granted their custody to the other parent. "'A decree awarding custody of minor children and fixing child-support payments is not subject to modification in the absence of a material change in circumstances occurring subsequent to the entry of the decree of a nature requiring modification in the best interests of the children.'" *Youngberg v. Youngberg*, 193 Neb. 394, 396, 227 N.W.2d 396, 397 (1975).
>
> We do not mean to say that the paramount question is not the best interests of the children, for, indeed, it is. We do mean to say that in response to a motion to modify a custody decree, before the trial court considers what is in the best interests of the children, the court must first find that there has been a material change of circumstances which occurred after the entry of the earlier order granting custody and which affects the best interests of the children.

In its order modifying the original custody agreement, the district court found that a material change of circumstances had occurred since 2005, because Kyle has demonstrated stability and security in his lifestyle and Amanda has been unable to demonstrate the same level of stability and security in her lifestyle. Specifically, the court found that since 2005, Kyle has had a stable home, has established a stable relationship, and has secured stable employment. In contrast, since 2005, Amanda has changed residences and employment frequently, is in the midst of a divorce, and has been convicted of multiple criminal offenses.

Upon our de novo review of the record, we conclude that the district court did not abuse its discretion in finding a material change of circumstances which affected the best interests of the children.

[8] The evidence presented at the modification hearing revealed that in the approximately 7 years since the original custody agreement, Amanda has changed residences and employment frequently. At the time of trial, she testified that she is trying to get a job "to please the court's, to please everyone else," but that she feels that a mother should stay home with her children. Amanda admitted that her inability to find stable employment was related to her criminal convictions. In 2011, Amanda was convicted of possession of marijuana, domestic assault, and disturbing the peace. In 2012, in the midst of these proceedings, Amanda was convicted of driving under the influence of alcohol. In addition, Amanda's current marriage has been marked by instability. Amanda has relied upon her husband to help care for the girls; however, Amanda and her husband are currently separated and planning to divorce. At the outset of these proceedings, Amanda attempted to move the children to Colorado despite Kyle's objection. During the school year prior to trial, the girls had numerous unexplained absences and tardies from school while in Amanda's care. We note, however, that there was no evidence these absences and tardies have negatively affected their schoolwork and that the record indicates both girls have done well in school so far. In sum, the evidence concerning Amanda's lifestyle in the last couple of years, and

consequently the lifestyle to which these children are exposed, presents a legitimate concern regarding their custody. See *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004) (in determining whether custody of minor child should be changed, evidence of custodial parent's behavior during year or so before hearing on motion to modify is of more significance than behavior prior to that time).

By contrast, during those same 7 years, Kyle has obtained steady employment and housing and he has demonstrated stability in his marriage. This evidence clearly demonstrates that Kyle currently has a more stable lifestyle than Amanda. Kyle expressed concern that Amanda is not able to support herself and the girls, and he testified that Amanda does not take care of the girls as much or as well as she did in 2005. Kyle once smelled marijuana in Amanda's residence when picking up the girls. Kyle indicated that the girls sometimes come to his home for visitation in dirty clothes and not having showered for some time.

We conclude that the totality of the evidence amounts to a material change in circumstances which has affected the children's best interests. In other words, had the district court been presented with this set of facts in 2005 in the context of a contested custody dispute, it would likely have been led to award custody of the children to Kyle.

### (b) Best Interests

The next inquiry is whether the best interests of these children compel a change of custody.

[9] Section 43-2923(6) provides:

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological

age, when such desires and wishes are based on sound reasoning; [and]

 (c) The general health, welfare, and social behavior of the minor child.

In addition to these factors, the Nebraska Supreme Court has held that in determining a child's best interests, courts

> "'may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child.'"

*Davidson v. Davidson*, 254 Neb. 357, 368, 576 N.W.2d 779, 785 (1998).

Based upon our de novo review of the record, we agree that the best interests of the children will be served by being placed in Kyle's custody. We acknowledge that this is a close case in that the girls are "typical, healthy, well-adjusted children" and that both Amanda and Kyle "enjoy a positive and healthy relationship with the minor children." Nevertheless, Kyle is able to offer a more stable environment for the children by virtue of his stable and solid housing, employment, and marriage, when compared to Amanda's past conduct and current living situation.

We conclude that the record supports a finding that a material change in circumstances has occurred such that it is in the best interests of the children to change their custody from Amanda to Kyle. In reaching this conclusion, we note that the 2005 order granting Amanda custody was based upon the

parties' stipulation, and there was no explicit finding by the district court that such a custody award was in the best interests of the children. We are also mindful of the fact that the trial judge heard and observed the witnesses and was in a better position to determine the credibility of the parties.

In determining that the trial court did not abuse its discretion in modifying custody of the children, we do not find that Amanda is an unfit parent. To the contrary, the evidence shows that Amanda is a loving parent and that the girls have generally been thriving in her care. Nevertheless, the record supports the district court's determination that their best interests would be better served in Kyle's custody.

### (c) Removal From Jurisdiction

Although Amanda did not assign error separately to the portion of the order granting Kyle permission to remove the children from the jurisdiction, for the sake of completeness, we address this issue.

[10] In relocation cases, a parent must first satisfy the court that he or she has a legitimate reason for leaving the state. See *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). As noted above, this case differs from the typical removal case because Kyle was the noncustodial parent seeking to move the children. It differs further in that Kyle is not "leaving the state," but, rather, he has resided in Pine Bluffs for several years and is seeking permission to relocate the children there. We agree with the district court that Kyle has demonstrated a legitimate reason to relocate the children.

[11] Once the threshold burden of showing a legitimate reason for leaving the state has been met, the court then determines whether removal to another jurisdiction is in a child's best interests, which in turn depends on (1) each parent's motives for seeking or opposing the move, (2) the potential the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Farnsworth v. Farnsworth, supra*.

### (i) Each Parent's Motives

The district court determined that neither party seemed to be "ill-motivated" in his or her position regarding a relocation of the children. We agree.

### (ii) Children's Quality of Life

The district court noted its previous findings in support of the conclusion that the children's best interests would be served by a change in custody. The court concluded that the children's quality of life "will be improved by relocation to the State of Wyoming." We agree.

### (iii) Impact on Noncustodial Parent

As noted by the district court, this factor is usually of paramount concern when a child is being relocated some distance away from the noncustodial parent. The court found that this was not the issue here, because the parties now live only about 40 miles apart. The court further found that this distance has not affected the current custodial and parenting arrangements and that a change in the custodial arrangements would not detrimentally impact Amanda's ability to have meaningful parenting time. We agree.

### (d) Conclusion Regarding Custody

We conclude that the district court did not abuse its discretion in finding that a material change in circumstances had occurred since entry of the 2005 order and in finding that it was in the best interests of the children to modify custody from Amanda to Kyle. We further conclude that there was no abuse of discretion in granting Kyle permission to move the children to Wyoming.

### 3. CHILD SUPPORT

After the district court awarded Kyle custody of Savannah and Catilyn, it addressed the parties' current financial circumstances and resulting child support obligations. Ultimately, the court imputed to Amanda an average monthly income of $628.33 and found that Kyle earned an average monthly income of $3,196.89. The court then indicated that normally, the court would prepare a "step worksheet" to reflect the parties'

obligations to their other children; however, in this instance, such a calculation was unnecessary because Amanda's obligation as the noncustodial parent "would be set at the minimum level of $50.00 per month regardless of other obligations." The district court then ordered Amanda to pay child support in the amount of $50 per month.

On appeal, Amanda appeals from the district court's order concerning child support. Essentially, Amanda argues that the court erred in ordering her to pay child support because the court erred in awarding Kyle custody of the children. Given our resolution of Amanda's first assignment of error regarding custody of the children, we find that the district court did not err in determining Amanda's child support obligation.

## V. CONCLUSION

Upon our de novo review of the record, we find that the district court did not abuse its discretion in finding that a material change of circumstances had occurred since the parties' 2005 custody agreement, which warranted a change in the custody of the minor children, and in granting Kyle permission to move the children to Wyoming. Accordingly, we affirm the order of the district court granting custody of the children to Kyle. We also affirm the court's order requiring Amanda to pay $50 per month in child support to Kyle.

AFFIRMED.

Irwin, Judge, dissenting.

I respectfully disagree with the conclusion of the majority that a material change in circumstances has occurred since the parties' 2005 custody agreement which affects the best interests of the children and which warrants a change in custody. Contrary to the conclusion of the majority, there is no evidence in the record to establish that the recent changes in the parties' circumstances have affected the children in any way. Instead, the evidence presented by both parties reveals that the children are happy and healthy and thriving in Amanda's care. For this reason, I would reverse the decision of the district court which modified the original custody agreement and awarded Kyle primary physical custody of the children.

The majority concentrates its analysis of whether there has been a material change of circumstances exclusively on the changes that have occurred in the parties' circumstances since the original custody agreement was filed. The majority concludes that the evidence demonstrates that in the 7 years since the original custody agreement, "Kyle has obtained steady employment and housing and he has demonstrated stability in his marriage," while during this same time period, "Amanda has changed residences and employment frequently, is in the midst of a divorce, and has been convicted of multiple criminal offenses." Based solely on these changes in the parties' lives, the majority finds that there has been a material change in circumstances warranting a change in custody.

I agree that the evidence presented at the modification hearing establishes that there have been changes in both Amanda's and Kyle's circumstances since the original custody agreement. However, I do not agree that an analysis of whether there has been a material change in circumstances warranting a change in custody should end with a finding that the parties have experienced changes in their lives since the original custody order. It is clear from our case law that not every change in the parties' circumstances justifies a change in custody. See *Youngberg v. Youngberg*, 193 Neb. 394, 227 N.W.2d 396 (1975). Instead, in order to find that a *material* change in circumstances has occurred, the changes in the parties' circumstances must be significant enough to have affected the best interests of the children involved. See *id*.

Because a material change in circumstances means a change in circumstances which has affected the best interests of the children, a complete analysis of whether such a change in circumstances has occurred in this case requires a discussion of both the changes that have occurred in Amanda's and Kyle's lives and whether the children have been affected by those changes. Here, the evidence presented at the modification hearing revealed that despite the changes in Amanda's and Kyle's lives, the children are flourishing under the current custody arrangement.

Under the current custody arrangement, Amanda has been the children's primary caregiver for the last 7 years. During that time, the children have thrived. Both Amanda and Kyle agree that Savannah and Catilyn are happy and healthy children who do well in school and who have an active life. At the modification hearing, Kyle testified that Savannah and Catilyn are basically "happy young girls." Similarly, the district court found that the evidence revealed that both Amanda and Kyle "enjoy a positive and healthy relationship with the minor children" and that the children are "typical, healthy, well-adjusted children." The majority does not dispute any of these factual findings.

There was no evidence presented at the modification hearing to establish that Amanda's current lifestyle has affected the girls in any way. There was no evidence that the girls have been negatively affected by moving frequently or by Amanda's marital problems. There was no evidence that the girls witnessed any of the instances of domestic strife between Amanda and her current husband or that they were aware of Amanda's criminal convictions. In fact, the only evidence presented to demonstrate that the girls knew anything about Amanda's recent struggles was Kyle's testimony that he had informed the girls that Amanda was "on drugs." And, Kyle admitted that he had no actual information about Amanda's drug use.

While I can understand the majority's concerns with regard to the evidence of Amanda's struggles and life choices, I cannot disregard the very clear definition of a material change in circumstances which has been stated time and time again in our case law. A material change in circumstances is a change which has affected the best interests of the children involved. Despite the changes in the lives of the parties, Savannah and Catilyn have thrived in Amanda's custody. Kyle did not present any evidence to demonstrate otherwise. Accordingly, I must conclude that Kyle failed to establish that there has been a material change in circumstances since 2005 which would warrant a change in custody. Although Kyle established that the parties' circumstances have changed, he did not establish that those changes have affected Savannah and Catilyn.

Accordingly, I would reverse the decision of the district court which modified custody by awarding Kyle primary physical custody of the children.