State of Nebraska on behalf of Dawn M.,
a minor child, appellee, v. Jerrod M.,
appellee, and Amber M., appellant.
___ N.W.2d ___

Filed April 7, 2015.    No. A-14-607.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Child Custody.** In addition to the statutory factors relating to the best interests of the child, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension, regardless of chronological age, and when such child's preference is based on sound reasons; and the general health, welfare, and social behavior of the child.
3. **Modification of Decree: Child Custody: Evidence: Time.** Evidence of a custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. The focus is on the best interests of the child now and in the immediate future, and how the custodial parent is behaving at the time of the modification hearing and shortly prior to the hearing is therefore of greater significance than past behavior when attempting to determine the best interests of the child.
4. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.
5. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Howard County: Karin L. Noakes, Judge. Affirmed.

James A. Wagoner for appellant.

Charles R. Maser for appellee Jerrod M.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Amber M. appeals the custody determination, made by the district court for Howard County, which awarded primary physical custody of the minor child, Dawn M., to Jerrod M., subject to parenting time as provided in the parenting plan. The court also ordered Amber to pay child support to Jerrod and denied Amber's application to move out of the State of Nebraska with Dawn. For the reasons that follow, we affirm.

## BACKGROUND

Dawn was born in November 2006 and shares a last name with her mother, Amber. Dawn's father, Jerrod, was not aware of Dawn's birth until a year or two later, when he was served with notice that he was named as her father in a paternity case. Jerrod has a criminal history and has been incarcerated for most of Dawn's life. Amber also has a criminal history, but has been incarcerated only for short periods of time.

Janet S., Amber's mother, provided a home and daily care for Dawn for most of Dawn's life. Amber resided with Dawn and Janet for periods of time, but not continuously. In the summer of 2012, Amber contacted Lori P., Jerrod's mother, to see if she would take care of Dawn, and Dawn was removed from Janet's home. Dawn spent the summer of 2012 and the 2012-13 school year with Lori at her home in Smith Center, Kansas. In September 2012, Amber signed a consent form giving Lori and her husband "physical care" of Dawn and the authority to consent to "any medical, dental, surgical, emergency treatment and / or [the] release of medical information" related to Dawn. Dawn returned to Janet's home with Amber after the end of the 2012-13 school year in Smith Center. Dawn's school records indicate she struggled in some areas in school in Smith Center and noted areas where she needed to improve.

In August 2013, Dawn began living with Jerrod, and on August 20, a temporary order was entered granting Jerrod temporary custody. Dawn has resided with Jerrod since that

time. Jerrod filed a motion to modify custody, parenting time, and child support on August 21. During the 2013-14 school year, Dawn attended Banner County School. She demonstrated some improvement, but had some trouble in certain areas, and Jerrod decided to hold her back to repeat the first grade.

In January 2014, Amber moved to Riverdale, Utah, to live with her boyfriend, who is now her fiance. Amber filed a complaint to modify on January 13, and she filed a request to move out of the state with Dawn on February 3. She had visits with Dawn 5 to 10 times at Janet's home between September and December 2013, and she has not seen Dawn in person since December 2013. Amber has missed scheduled visits, but she has spoken with Dawn on the telephone.

The parties' complaints regarding custody, child support, and parenting time, and Amber's request to move out of the state, were addressed at trial on June 2, 2014. The parties stipulated that there had never been a permanent order establishing custody or parenting time and that the trial was held for that purpose. The court was also tasked with deciding whether to modify the child support order and, if Amber was awarded custody, whether she would be allowed to move out of the state with Dawn.

The court found that neither parent had been consistently present in Dawn's life, but that Jerrod has had day-to-day contact with her and has provided consistent care for her for the 10 months preceding the hearing. The court was "greatly concerned" with Jerrod's past criminal history, especially his convictions for assaultive behavior. However, the court found there was no evidence that indicated Dawn had been abused or placed in a dangerous situation since she was placed with Jerrod. The court found that Jerrod was taking the appropriate steps toward stability and providing for Dawn, including maintaining steady employment and providing for her physical care and educational needs. Ultimately, the court found it was in Dawn's best interests that Jerrod be awarded custody, subject to Amber's parenting time as set forth in the parenting plan. The court also ordered Amber to pay child support in the amount of $71 per month starting July 1, 2014. The

court denied Amber's motion to move Dawn out of the State of Nebraska.

## ASSIGNMENTS OF ERROR

Amber asserts the court abused its discretion in awarding custody to Jerrod. Amber also asserts the district court erred in failing to make any specific findings that Dawn can be adequately protected from harm and in failing to impose any limits reasonably calculated to protect Dawn, because Jerrod was previously convicted of a charge of domestic assault. Amber asserts the court erred in denying her request to move out of the State of Nebraska with Dawn and in devising a parenting plan that she deems unworkable.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Collins v. Collins*, 21 Neb. App. 161, 837 N.W.2d 573 (2013).

## ANALYSIS

*Jerrod's Assault Conviction.*

Amber asserts the trial court erred by granting custody to Jerrod without making specific findings pursuant to Neb. Rev. Stat. § 43-2932 (Reissue 2008), as he had been previously convicted of domestic assault. She asserts the court's implicit findings that granting custody to Jerrod was appropriate does not satisfy the statute's requirement of explicit findings. She referred to Jerrod's previous charge for domestic assault against his estranged wife and asserted that the trial court failed to make written findings that Dawn would be adequately protected in Jerrod's care.

Neb. Rev. Stat. § 43-2929 (Cum. Supp. 2014) states that a parenting plan shall serve the best interests of the child pursuant to Neb. Rev. Stat. §§ 42-364, 43-2923, and 43-2929.01 (Cum. Supp. 2014). Section 43-2929(1)(a) and (b)(ix) provides that the parenting plan should assist in developing a restructured family that serves the best interests of the child by accomplishing the parenting functions and should include

"[p]rovisions for safety when a preponderance of the evidence establishes child abuse or neglect, domestic intimate partner abuse, unresolved parental conflict, or criminal activity which is directly harmful to a child."

Section 43-2932 provides guidance for when limitations should be included in the parenting plan for the protection of the child or the child's parent. Section 43-2932(1)(b) states that if a parent is found to have engaged in any activity specified in subsection (1)(a), such as domestic intimate partner abuse, then "limits shall be imposed that are reasonably calculated to protect the child or child's parent from harm." Section 43-2932(3) states that if a parent is found to have engaged in any activity specified in subsection (1), the court "shall not order legal or physical custody to be given to that parent without making special written findings that the child and other parent can be adequately protected from harm by such limits as it may impose under such subsection."

Section 43-2923(2) states that when a preponderance of the evidence indicates domestic intimate partner abuse, the best interests of the child require a parenting and visitation arrangement that provides for the safety of the "victim parent."

In the present case, the domestic abuse was between Jerrod and a third party. While it is true that Jerrod was convicted of domestic assault, the conviction was the result of an incident with Jerrod's estranged wife. There is no evidence that the incident involved Amber. Section 43-2932(3) refers to protection of "the child and other parent" when a parent has engaged in domestic abuse. Accordingly, we conclude that § 43-2932 applies to instances where domestic abuse occurred between the parents of the child or children at issue, where it is necessary to ensure that there is no future domestic abuse to the "other parent."

If there has been no domestic intimate partner abuse between the parents, there is no reason to include provisions to protect the child or the other parent. There is no allegation that Amber was abused or that there was any violence involved when transferring the child for visits. Accordingly, § 43-2932 is inapplicable, and it was not necessary for the court to make specific written findings pursuant to the statute

before awarding Jerrod custody. This assignment of error is without merit.

*Award of Custody to Jerrod.*

Amber asserts the trial court erred in awarding custody of Dawn to Jerrod. According to § 43-2923(1), the best interests of the child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress. In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors listed in § 43-2923(6):

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desire and wishes are based on sound reasoning;

> (c) The general health, welfare, and social behavior of the minor child;

> (d) Credible evidence of abuse inflicted on any family or household member . . . and

> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

[2] In addition to the statutory factors relating to the best interests of the child, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension, regardless of chronological age, and when such child's preference is based

on sound reasons; and the general health, welfare, and social behavior of the child. *Collins v. Collins*, 21 Neb. App. 161, 837 N.W.2d 573 (2013).

Amber asserts that in light of Jerrod's history of criminal activity and his lack of involvement in Dawn's life prior to 2013, Jerrod is not the proper party to have custody of Dawn. She asserts additional facts in support of her position, including the following: Jerrod did not acknowledge paternity until a case was filed against him in 2007, and Dawn does not share his last name. Jerrod did not regularly pay child support after it was ordered in November 2008. While Dawn was in Amber's custody, three attempts to facilitate visitation with Jerrod were unsuccessful. At the time of trial, Jerrod did not have a driver's license as a result of a driving under the influence conviction in 2011. Amber asserts the trial court disregarded these facts and other "disabilities" which would inhibit Jerrod's ability to provide for Dawn in the future.

[3] In *Schrag v. Spear*, 22 Neb. App. 139, 849 N.W.2d 551 (2014), *reversed on other grounds* 290 Neb. 98, 858 N.W.2d 865 (2015), this court considered the behavior of a parent in a case where modification of child custody was at issue. We noted that Nebraska courts have held that evidence of a custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. *Id*. The focus is on the best interests of the child now and in the immediate future, and how the custodial parent is behaving at the time of the modification hearing and shortly prior to the hearing is therefore of greater significance than past behavior when attempting to determine the best interests of the child. *Id*. See, also, *Hoins v. Hoins*, 7 Neb. App. 564, 584 N.W.2d 480 (1998). Although this case is not a modification, as permanent custody had not been previously decided, the standard for determining a child's best interests remains the same in an initial custody determination. § 43-2923. See, also, *Schrag v. Spear, supra*; *Collins v. Collins, supra*.

Amber's recitation of the above facts is supported by the record. However, the record also shows that Jerrod had made significant changes in his life and demonstrated a willingness

to provide for Dawn in the months preceding the custody hearing. It is true that he was incarcerated off and on throughout Dawn's life and that he was not involved in her day-to-day care until he gained temporary custody in 2013. However, the record shows he was not made aware of his paternity until he was served in prison with notice of a paternity case filed against him. Jerrod testified that his driver's license had been revoked, but that he was eligible at the time of the hearing to get it reinstated. The record shows that since August 2013, he has provided a safe and stable home and cared for Dawn's educational, emotional, and physical needs. He moved from St. Paul to Harrisburg, Nebraska, to pursue a job opportunity and is the head foreman at a mill. Through this job, Jerrod was given housing for his family free of charge in a five-bedroom home and was scheduled to become eligible for insurance benefits after 6 months of employment.

Prior to this case, Dawn was in Amber's custody, but a significant portion of her life was spent with her maternal and paternal grandmothers. The record shows that Amber resided with Dawn at times, but that at other times, she was left in the care of Janet, Amber's mother, or Lori, Jerrod's mother. Amber asked Lori to care for Dawn in Smith Center from September 2012 to June 2013, because Amber was having problems with the father of her youngest two children. During that time, Amber provided Lori and her husband a power of attorney to make decisions on Dawn's behalf. Jerrod testified that he had some contact with Dawn while she resided with his mother. Dawn was nervous at first, but then warmed up to him. Jerrod testified that he was told numerous times by Amber and her family that he was not welcome in Dawn's life. Janet testified that Jerrod was, in fact, welcome, but that he had not taken advantage of opportunities to see Dawn. However, Janet's credibility was brought into question when she denied making a "Facebook" entry stating that she had "raised that girl [Dawn] from birth," and a copy of the alleged entry was entered into the record.

After Jerrod gained temporary custody of Dawn in August 2013, Amber did not attend all of the scheduled visitation times. Both Amber and Jerrod testified that there were times

Amber was scheduled to pick up Dawn for visits, but that she failed to do so. Amber's last visit with Dawn was in December 2013, and since that time, she had only had telephonic contact with her. Amber asserts that Jerrod caused the visitation lapses between November and December 2013, because he moved from St. Paul to Harrisburg. However, the record shows that in January 2014, Amber moved with her two youngest children, Dawn's half siblings, to Utah to live with her fiance, a distance far more likely to significantly affect visitation than a move within the State of Nebraska.

Jerrod testified that Dawn got behind in her schoolwork while she resided in St. Paul and that she had made marked improvement while attending Banner County School after moving to Harrisburg. Notwithstanding that improvement, Dawn was to be held back in first grade for the 2014-15 academic year. The trial court found that Jerrod had made a "difficult and mature decision" which demonstrated a commitment to Dawn's education and showed that he was acting in her best interests.

[4,5] A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Collins v. Collins*, 21 Neb. App. 161, 837 N.W.2d 573 (2013). Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. It is clear that the court considered the factors involved in determining parental fitness and the child's best interests when deciding the issue of permanent custody. We find the trial court did not abuse its discretion in granting custody to Jerrod.

*Removal From State of Nebraska*.

[6] Amber asserts the trial court abused its discretion in denying her motion to remove Dawn from the State of Nebraska to live with her, her fiance, and Dawn's younger half siblings in Utah. Having found that the trial court did not err in finding Jerrod was the appropriate parent to have custody of Dawn, we need not address this assignment of error.

An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

*Parenting Plan.*

Amber asserts the parenting plan created by the court is "unworkable" and punishes her for moving out of the state. She states the court gave her "use-it-or-lose, alternating weekend visits when the court knows the distance barriers and lack of license to transport by [Jerrod]." Brief for appellant at 14. She also states that the plan is contrary to the Parenting Act, but does not provide any legal authority or reasoning to support her conclusion.

The parenting plan Amber proposed at the custody hearing allowed for extended summer visitation each year from June 1 to August 1, with extended time over the holidays. Jerrod testified that the proposed plan was reasonable and that he would be open to Amber's receiving the same proposed visitation time if he were granted custody. He also testified that he was willing to meet Amber halfway between Harrisburg and Amber's residence in Utah to transfer Dawn. Jerrod testified that Dawn would like to play softball and that he would like her to be able to do so during the summer holidays, if it does not interfere too much with summer parenting time.

In the parenting plan, the trial court ordered a visitation schedule which consists of alternating weekends, alternating holidays, and an extended time period over the summer, which is typical of many parenting plans. The court's plan provides that Christmas is defined as the time after the child is excused from school until December 27. The New Year's holiday begins on December 27 and ends the evening before Dawn is scheduled to return to school. This allows both parents to have an extended period with the child during the holiday season. The court-ordered plan granted Amber 6 weeks of parenting time during the summer, which does not greatly differ from the approximately 8 weeks of parenting time she provided for in the proposed plan.

Presumably, Amber's assessment that the plan is "unworkable" stems from her inability to see Dawn on alternating weekends, because Amber resides in Utah. The court acknowledged that Amber's residence in Utah would make it unlikely that she would exercise her weekend parenting time on a regular basis, yet it still provided the possibility for her to use that time if she were so inclined. The record shows that Amber's mother and stepfather reside in St. Paul and that the father of her two youngest children presumably still resides in or around Kearney, Nebraska. These factors, in addition to Dawn's continued presence in Nebraska, may make Amber more likely to return to Nebraska occasionally on weekends. The ordered schedule actually allows Amber the potential for more time with Dawn during the school year than her own proposed plan, which did not allow for weekend visitation during the school year, except on holidays.

A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Collins v. Collins*, 21 Neb. App. 161, 837 N.W.2d 573 (2013). Upon our review of the record, we find the trial court did not abuse its discretion in creating the ordered parenting plan.

## CONCLUSION

After our de novo review of the record, we conclude that the trial court did not abuse its discretion in granting custody to Jerrod and that the court was not obligated to make specific written findings that Dawn and Amber would be adequately protected from harm. Having found that granting custody in favor of Jerrod was appropriate, we need not address Amber's assignment of error regarding the removal of Dawn from the State of Nebraska. We find the trial court did not abuse its discretion in the creation of the ordered parenting plan.

Affirmed.